IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 08-105
)
TYREE LAVARE TRULEY )

O P I N I O N

DIAMOND, D.J.

On February 27, 2008, a federal grand jury issued a two-count indictment charging defendant Tyree Lavare Truley at Count One with possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B)(ii) and at Count Two with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A)(i).

Currently pending before the court is defendant's motion to suppress evidence.[1] A hearing was held before this member of the court on May 20, 2009, at which the court heard testimony from Pennsylvania State Police Trooper Christian Lieberum. For the following reasons, defendant's motion to suppress will be denied.

---

[1] Also pending is defendant's motion requesting notice of uncharged misconduct evidence pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure. The government has indicated it has no intention of introducing any evidence falling within the scope of Rule 404(b). Defendant's motion will be denied as moot.

The uncontradicted testimony of Trooper Lieberum, which the court finds to be wholly credible, establishes the following. On April 30, 2007, Lieberum observed a gold four-door passenger vehicle pull out of a Sunoco station in Uniontown. The vehicle had dark window tint on both driver-side windows, both passenger-side windows and also the back window, which prevented Lieberum from seeing inside. As a result, Lieberum initiated a traffic stop.

After the stop, Lieberum approached the vehicle and requested that the driver open the window to allow him to see inside. The driver complied and Lieberum observed a female, Erin Tantlinger, in the driver's seat and defendant seated in the front passenger seat. Lieberum noticed a pistol protruding from defendant's waistband and also a small white rock which appeared to be cocaine near Tantlinger's feet on the floor of the vehicle. Defendant stated he had a permit for the weapon.

Defendant was ordered to keep his hands up and Tantlinger was asked to exit the vehicle. She stated that the vehicle belonged to her mother but that she pays the bills on it and normally operates it. She also admitted that she had picked up defendant near his own vehicle and that she had been driving him around Uniontown at his request and stopping at different houses. She further stated that defendant had a large plastic bag with him when he got into her vehicle. Upon Lieberum's request, Tantlinger consented to a search of the vehicle for weapons and/or illegal narcotics.

Defendant was asked to step out of the vehicle so that it could be searched. As he exited the vehicle, Lieberum saw a small tin can, later found to contain cocaine, fall from defendant's person. He also observed a box of baking soda, commonly used in the processing of cocaine, at defendant's feet. Inside the vehicle, the officers retrieved the small piece of cocaine from the driver's seat area as well as a large shopping bag containing two smaller plastic bags filled with cocaine.

While standing outside the vehicle, defendant indicated that Tantlinger had nothing to do with what was inside the bag. This statement was not in response to any type of questioning by the troopers. Later, at the Uniontown Barracks while Lieberum was typing the charges against him, defendant again stated that Tantlinger should not be charged because she did not know what was inside the bag. Again, this statement was unsolicited and was not in response to any questioning.

Defendant's pending motion seeks suppression of all physical evidence seized from his person or from Tantlinger's vehicle on April 30, 2007, following the traffic stop, as well as any statements he made to the troopers subsequent to the stop, both those made at the scene as well as those made later at the barracks.

Defendant's primary contention is that the physical evidence in this case should be suppressed because Lieberum lacked reasonable suspicion of a traffic violation to justify the stop of the vehicle. Instead, defendant argues that the

sole basis for the traffic stop, the tinted windows, was a mere pretext because the window tint on the vehicle in fact did not violate state law.

It is axiomatic that a law enforcement officer may conduct a brief, investigatory traffic stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. United States v. Delfin-Colina, 464 F.3d 392, 396 (3d. Cir. 2006); Terry v. Ohio, 392 U.S. 1, 30 (1968). A traffic stop is deemed reasonable when an objective view of the facts shows that the officer was aware of specific, articulable facts that support a conclusion that an individual had violated a traffic law by the time of the stop. Delfin-Colina, 464 F.3d at 398.

An officer's burden of production in justifying a traffic stop is to: (1) identify the ordinance or statute that he believed had been violated; and, (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction based upon those facts. Id. at 399.

Here, Lieberum's testimony identified the statute that he believed to have been violated as §4524(e) of the Pennsylvania Motor Vehicle Code, which prohibits the operation of a vehicle with "any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. §4524(e).

AO 72
(Rev. 8/82)

Lieberum further provided specific, articulable facts supporting his belief that the statute had been violated, testifying that because of the tinted windows he was unable to see into the vehicle to such an extent that he was unable to even observe that there was a passenger in the vehicle until the stop had been made and Tantlinger had opened the driver's side window.

The court finds that an objective view of the facts shows that Lieberum had a reasonable suspicion to believe that the vehicle in question was in violation of §4524(e), which served as a legitimate basis for the traffic stop. See e.g. United States v. Bellinger, 284 Fed. Appx. 966, 968 (3d Cir. 2008)(reasonable suspicion found to justify traffic stop where officers aware of tinted windows and tinting did not permit them to see inside vehicle in violation of 75 Pa.C.S.A. §4524); United States v. Leal, 235 Fed. Appx. 937, 939 (3d Cir. 2007) (observance of heavily tinted windows justified traffic stop).

Defendant's contention that the stop was invalid because the windows on Tantlinger's vehicle in fact did not violate state law is unavailing. An officer need not be factually accurate in his belief that a traffic law had been violated, but need only produce facts establishing that he reasonably believed that a violation had taken place. Delfin-Colina, 464 F.3d at 398. Here, Lieberum's testimony establishes that he reasonably believed that the tinted windows were in violation of §4524(e), justifying the traffic stop, whether or not the statute actually

had been violated. See Leal, 235 Fed. Appx. at 939 (whether or not vehicle technically was in violation of §4524(e), officer reasonably could have believed that the statute had been violated because windows were tinted heavily).

Defendant's remaining arguments in favor of suppression of the physical evidence seized likewise are without merit. First, because the initial stop was valid, no Fourth Amendment violation occurred when defendant was ordered out of the vehicle. It is well settled that an officer executing a traffic stop, in exercising reasonable superintendence over the car and its occupants, may order the driver and any passengers out of the vehicle, or order them to remain in the vehicle with their hands in the air, even absent any particularized suspicion. See, e.g., United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004); Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977); Maryland v. Wilson, 519 U.S. 408 (1997).

Second, defendant also was lawfully arrested after the stop because Lieberum had probable cause to believe a crime had been committed when he observed the tin containing cocaine fall from defendant's person as he exited the vehicle and also saw a small rock of cocaine, as well as a box of baking soda, on the floor of the vehicle. Maryland v. Pringle, 540 U.S. 408, 410 (1997).

Finally, there is no merit to defendant's argument that the vehicle was unlawfully searched. As an initial matter, defendant as a mere passenger in the car has no standing to challenge the search of the vehicle, as he has failed to

establish that he had any reasonable expectation of privacy in Tantlinger's vehicle. See <u>United States v. Baker</u>, 221 F.3d 438, 442 (3d Cir. 2000) (passenger in car that he neither owns nor leases typically has no standing to challenge search of that car).

Even assuming defendant could establish standing, the search of the car was lawful, as Tantlinger consented to the search of her vehicle and defendant does not allege that Tantlinger's consent was not freely and voluntarily given, nor do the facts as established at the hearing support such a finding. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222 (1973).

Moreover, the officers also had probable cause to believe the vehicle contained contraband after observing a piece of rock cocaine at Tantlinger's feet, a box of baking soda at defendant's feet and a small tin of cocaine that fell from defendant as he exited the vehicle, further justifying a warrantless search under the automobile exception to the warrant requirement. <u>Arizona v. Gant</u>, 129 S. Ct. 1710, 1721 (2009)(if there is probable cause to believe a vehicle contains evidence of criminal activity, a search of any area of the vehicle in which such evidence might be found is authorized); <u>see also United States v. Ross</u>, 456 U.S. 798, 820-21(1982).

Defendant next seeks suppression of any statements that he made to the troopers after the traffic stop, both those he made at the scene and those he made later at the barracks. Defendant argues that any statements he made should be suppressed because:

(1) the statements were made following an illegal arrest; (2) the statements were the product of custodial interrogation and he was not adequately advised of his Miranda rights; and, (3) the statements otherwise were involuntary.

Initially, defendant's argument that his statements should be suppressed as the fruit of the poisonous tree must be rejected as both the traffic stop and defendant's arrest were lawful as already discussed.

Second, although defendant contends that the statements should be suppressed because he was not adequately advised of his Miranda rights, the testimony of Trooper Lieberum establishes that the statements were not the product of any type of interrogation but rather were unsolicited, negating the necessity for Miranda warnings.

Before police can initiate custodial interrogation, they must advise the defendant of certain rights, including the right to remain silent and the right to counsel. Miranda v. Arizona, 384 U.S. 436, 468-470 (1966). However, Miranda warnings are required only when a suspect is both in custody and subject to interrogation. Alston v. Redman, 34 F.3d 1237, 1246-47 (3d Cir. 1994). Interrogation means "express questioning or its functional equivalent ... any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Brownlee, 454 F.3d 131, 146 (3d Cir. 2006)(quoting

AO 72
(Rev 8/82)

Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)).

Under the totality of the circumstances as established through the testimony at the hearing, the court finds that defendant was not subject to interrogation when he volunteered his statements either at the scene of the traffic stop or in the police barracks. Instead, all of the statements that defendant made were volunteered by defendant without any prompting by police.

As to defendant's statement made at the scene of the traffic stop, defendant contends that the act of the officers of showing him the plastic bag containing the cocaine was the functional equivalent of questioning and elicited his response that Tantlinger knew nothing about it. However, it is far from clear from the testimony of Lieberum if any of the officers in fact showed defendant the bag, or if he merely observed them retrieving it from the vehicle. In any event, even if one of the troopers had showed defendant the bag, the totality of the circumstances as established at the hearing fail to support a finding that such an action amounted to the functional equivalent of interrogation.

Likewise, the mere fact that Lieberum was typing up the charges against defendant at the barracks at the time defendant volunteered his statement that Tantlinger should not be charged again is insufficient to support a finding that defendant was subject to the functional equivalent of interrogation. Lieberum simply was sitting at a computer working, not engaged in any

- 9 -

sort of conversation with defendant, when defendant without any prompting provided the unsolicited statement.

Finally, to the extent defendant alleges that any of his statements were involuntary, such a contention clearly is not supported by the facts as established at the hearing.

A statement is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." Arizona v. Fulimante, 499 U.S. 279, 288 (1991). Whether a statement is voluntarily made is determined from "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth, 412 U.S. at 226). The government has the burden of establishing the voluntariness of any statements given. Miller v. Fenton, 796 F.2d 598, 604 (3d Cir.), cert. denied, 479 U.S. 989 (1986).

Here, the government has met that burden. The totality of the circumstances as gleaned through Lieberum's testimony establish that defendant's statements were unsolicited and voluntarily were made. There is no evidence that defendant was coerced or that Lieberum or any other officer engaged in any type of unlawful pressure or tactics. Instead, defendant's statements were made in the absence of any type of interrogation and no threats, promises or coercion prompted those statements. Thus, the court finds that defendant's statements were voluntary in all respects.

AO 72
(Rev. 8/82)

Accordingly, for the foregoing reasons, defendant's motion to suppress will be denied.

An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: July 13, 2009

cc: Craig W. Haller
Assistant U.S. Attorney

W. Penn Hackney
Assistant Federal Public Defender